IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WAYNE A. COVER, ) | CASE NO. 1:15CV1703 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. ) | |

Plaintiff Wayne Cover ("Cover") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 12.

As set forth more fully below, the Administrative Law Judge's ("ALJ") reliance upon the Vocational Expert's ("VE") testimony was erroneous because there was a discrepancy between the jobs identified by the VE and the residual functional capacity ("RFC") assessed by the ALJ, i.e., the jobs identified by the VE incorporated a sit-stand option but the RFC did not.  Moreover, the ALJ mischaracterized the VE's testimony by stating that the jobs identified by the VE could be performed either with or without a sit-stand option.  They could not.  Accordingly, the Commissioner's decision is **REVERSED** and the case remanded for further proceedings.  The instructions on remand will be set forth by the Court after stipulation or further briefing by the parties.

## I. Procedural History

On September 9, 2013, and October 4, 2013, Cover filed applications for SSI and DIB, respectively, alleging a disability onset date of August 2, 2013.  Tr. 24, 322.  He alleged disability based on the following: swelling in feet, pain in feet, HBP, blurred vision, and dizzy spells.   Tr. 327.  After denials by the state agency initially (Tr. 77, 78) and on reconsideration (Tr. 97-98), Cover requested an administrative hearing.  Tr. 167.  A hearing was held before Administrative Law Judge ("ALJ") Penny Loucas on September 3, 2014.[1]  Tr. 40-76.  At the hearing, Cover amended his disability onset date to September 3, 2013.  Tr. 42-43.  In her September 24, 2014, decision (Tr. 24-33), the ALJ determined that Cover could perform jobs that exist in significant numbers in the national economy, i.e., he was not disabled.  Tr. 32.  Cover requested review of the ALJ's decision by the Appeals Council (Tr. 20) and, on January 5, 2015, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II. Evidence

### A. Cover's Testimony

Cover was represented by a non-attorney and testified at the administrative hearing.  Tr. 41-61, 70.  He was born in 1964 and was 50 years old at the time of the hearing.  Tr. 43.  He previously worked as a punch press operator, quality control assembly test technician, and sheet metal worker.  Tr. 59-61.

### B. Vocational Expert's Testimony

Vocational Expert ("VE") Paula Zinsmeister testified at the hearing.  Tr. 59-69.  The ALJ, Cover, and the VE discussed Cover's past relevant work.  Tr. 59-61.  The ALJ asked the VE to determine whether a hypothetical individual of Cover's age, education and work

---

[1] A hearing scheduled for June 9, 2014, was continued when Cover did not appear and it was discovered that the notice was not sent to Cover's correct address.  Tr. 74-76.

experience could perform the work he performed in the past if the individual had the following characteristics: can perform light work; can stand or walk a maximum of two hours a day; can never climb any ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme heat and cold and all exposure to unprotected heights; can understand, remember, and carry out simple instructions; can maintain concentration, persistence and pace for work that is simple and routine in nature without strict time or production-based quotas; can interact with the general public, coworkers and supervisors to accept instructions and carry out instructions but with no negotiating, persuading, mentoring, or more in-depth type of interactions; and is limited to routine-type changes in the workplace setting.  Tr. 61-62.  The VE answered that such an individual could not perform Cover's past relevant work.  Tr. 62.

      The ALJ asked if there was other work that the individual could perform and the VE answered, "The restriction to stand and walk two hours would place him within the sedentary level."  Tr. 62.  The ALJ stated that light work means that an individual can push or pull while sitting; it is still light exertion.  Tr. 62.  The ALJ identified jobs, such as office helper, order caller, and watch guard, "that carry a characterization of light exertion but limit standing and walking to two—can be performed with standing and walking two hours a day."  Tr. 62.  The VE responded, "I don't agree with that."  Tr. 62.  She explained that the job of watch guard may require that an individual walk more than two hours a day and that "it really depends on the situation.  If there's a sit/stand opinion, but by definition, a light exertional level, you are required to stand and walk more than two hours a day."  Tr. 63.  The following exchange occurred:

    ALJ: By what standard?
    VE: DOT.

3

> ALJ: The DOT but not per the regulations.
> VE: Okay.
> ALJ: Well, it—
> VE: Okay.
> ALJ: And the reason why I say that is because under our regulations...
> VE: I thought it was a third, less than a third a day. Okay.
> ALJ: It's actually not defined.
> VE: Okay.
> ALJ: It's rather vague, and, okay, exertional definitions under 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
> VE: Correct.
> ALJ: So that's it. They do not characterize or define what they mean by a good deal of the time. So anyway, so that's what the regulations say, and I also have jobs—now tell me how you feel about this—parking lot attendant, a cashier at a self-serve place, a price marker, and a ticket seller.
> VE: Well...
> ALJ: Light exertion, stand/walk max two hours.
> VE: They would have—those positions may have a sit/stand opinion, but the cashier generally we consider that a position with a sit/stand option. I can look at the light jobs for sit/stand options.

Tr. 62-64. The ALJ stated that a sit-stand option would affect the number of jobs that would be available and that the VE could offer an opinion as to how the number of jobs would be impacted, based on her education, training and experience. Tr. 64. The ALJ continued:

> ALJ: So I guess in asking you these questions, let me come back and say this. Do you agree or disagree with the proposition that a job such as those that I've described can be characterized as light jobs even though they only have a maximum of two hours standing and walking?
> VE: If they—let me—
> ALJ: Take your time.
> VE: They—no, they could be—my understanding is interpreting that information, that if a light position with the lifting requirements does not—it does have the opportunity for a sit/stand option, then we could consider it a light occupation. And we could consider that he would meet those requirements.
> ALJ: Okay, so—
> VE: But it's—the sit/stand option is the key for those.
> ALJ: But I'm not putting a sit/stand option in the RFC.
> VE: No.
> ALJ: Okay, I'm not doing that.

4

>VE: I understand, but I would be when I would be interpreting light positions that I believe he could do with this hypothetical.  I would be thinking of those in my experience where he would have the opportunity to sit and stand.

Tr. 64-65.  The ALJ then confirmed with the VE that an RFC is the maximum that a person can perform, not the minimum.  Tr. 65.  The ALJ reiterated that she was not imposing a sit-stand option in the RFC.  Tr. 65.  The VE stated that she understood.  Tr. 66.  The ALJ verified that the VE, when considering the jobs the ALJ identified, was "looking at jobs that would allow a sit/stand option." Tr. 66.  The VE affirmed, stating, "In my experience."  Tr. 66.  The ALJ again confirmed that the jobs the VE would provide that would be responsive to the hypothetical individual posed by the ALJ would allow for a sit-stand option for light work and the VE stated, "...correct."  Tr. 66.  The VE then provided the following jobs the hypothetical individual could perform: cashier II (30,000 Ohio jobs; 850,000 national jobs), merchandise marker (20,000 Ohio jobs; 300,000 national jobs), and routing clerk (2,000 Ohio jobs; 50,000 national jobs).  Tr. 66.

The ALJ asked the VE to consider how her answer would change if the same hypothetical individual as before could perform work "squarely in the sedentary exertion" with no limits on standing or walking.  Tr. 67.  The VE answered that such an individual could perform work as a document preparer (2,000 Ohio jobs; 45,000 national jobs) and table worker (125 Ohio jobs; 45,000 national jobs).  Tr. 67.  The ALJ asked the VE if she was familiar with a job called callout operator.  Tr. 67.  The VE stated that she was familiar with such a job but that she did not use that job when answering the question.  Tr. 67.  The ALJ asked the VE to explain what she knows about the job callout operator and whether that job would be responsive to the hypothetical.  Tr. 67.  The VE stated that callout operator is "basically compiling credit information" and there are numbers for it, but that she does not believe that it exists as a stand-

5

alone position.  Tr. 67-68.  She opined that the job is more involved and not represented correctly in the DOT.  Tr. 68.  She believes it is a piece of a job but not a complete job.  Tr. 68.

Next, Cover's representative clarified that the three jobs identified previously by the VE in response to the first hypothetical—cashier, merchandise marker and routing clerk—had a sit-stand option.  Tr. 68.  The VE confirmed that the jobs she provided had a sit-stand option.  Tr. 68.  Cover's representative clarified that the ALJ did not include a sit-stand option in her RFC assessment.  Tr. 68.  The ALJ confirmed that her RFC contained no sit-stand option.  Tr. 68.

Cover's representative asked the VE whether the individual in the ALJ's first hypothetical could perform work if that individual would be off task 20% of the time.  Tr. 69.  The VE answered that the 20% off-task limitation would preclude employment.  Tr. 69.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[2] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In her September 24, 2014, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018. Tr. 26.

2. The claimant has not engaged in substantial gainful activity since September 3, 2013, the alleged onset date. Tr. 26.

---

[2] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

7

3. The claimant has the following severe impairments: cardiac arrhythmia, obesity, congestive heart failure, personality disorder, and alcohol abuse. Tr. 26.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 27.

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §404.1567(b) and §416.967(b) and meaning the claimant can exertionally perform light work; stand and/or walk a maximum of two hours a day; never climb any ladders ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; unlimited balancing; avoid concentrated exposure to extreme cold and heat; avoid all exposure to unprotected heights; as for mental limitations, the claimant can understand, remember and carryout simple instructions; can maintain concentration, persistence, and pace for work that is simple and routine in nature without strict time or production based quotas; can interact with general public, co-workers, and supervisors to accept instructions, carry out instructions, but no negotiating, persuading, mentoring, or more in depth type of interactions; and is limited to routine type changes in the workplace setting. Tr. 28.

6. The claimant is unable to perform any past relevant work. Tr. 31.

7. The claimant was born on March 3, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. Tr. 31.

8. The claimant has a limited education and is able to communicate in English. Tr. 31.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. 32.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 32.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2013, through the date of this decision. Tr. 33.

### V. Parties' Arguments

Cover objects to the ALJ's decision on two grounds. He argues that the VE's testimony does not support the ALJ's step five decision and that "unambiguous Agency policy" states that jobs are sedentary if standing and/or walking is required only occasionally, i.e., no more than 2 hours in an 8-hour workday. Doc. 15, pp. 4-10. In response, the Commissioner submits that the ALJ reasonably relied on the VE's testimony. Doc. 17, pp. 5-7.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A. The ALJ committed reversible error because she mischaracterized the VE's testimony

The ALJ's decision is not supported by substantial evidence because she mischaracterized the VE's testimony. There is no disputing that the ALJ's RFC assessment and hypothetical question to the VE did not contain a sit-stand option. There is no disputing that the VE considered a sit-stand option when she identified jobs that the hypothetical individual posed

9

by the ALJ could perform.  And yet the ALJ, in her decision, erroneously stated, "The vocational expert also noted that these jobs [cashier, merchandise marker, routing clerk] could be performed within this residual functional capacity either with or without a sit-stand option."  Tr. 32.  That was not the VE's testimony.  The Commissioner's argument that the ALJ and the VE merely engaged in "semantics" at the hearing (Doc. 17, p. 9) is wholly unpersuasive.  So is the Commissioner's assertion that the VE "confirmed that 'somebody could sit or stand while doing the job[s].'"  Doc. 17, p. 9.  The VE stated, *five times*, that her jobs were based on a hypothetical that included a sit-stand option and the ALJ stated, four times, that her hypothetical and RFC assessment did not include a sit-stand option.  The ALJ made an erroneous finding of fact when she characterized the VE's testimony as not including a sit-stand option and her purported reliance upon the VE's answer is, therefore, reversible error.  42 U.S.C. § 405(g); *Wright*, 321 F.3d at 614.  The Court need not consider Cover's additional argument that a job is sedentary if standing and/or walking is required only occasionally, i.e., no more than 2 hours in an 8-hour workday.

> **B.  The parties shall file a stipulated remand or supplemental briefing regarding the proper instructions on remand**

Although Cover requests "remand for further proceedings," he does not explain what, precisely, the instructions on remand should be.  To recap: the ALJ assessed an RFC that limited Cover to light work and the VE did not identify jobs that an individual with the limitations described in the RFC could perform. Rather, the VE identified jobs that entail a sit-stand option, which is not incorporated in the RFC.  It is not clear from the parties' briefs whether, at this point, Cover would be considered disabled and an award of benefits would be appropriate or whether instructions to consider whether Cover has transferable job skills (which the ALJ did not address) and whether there are sedentary jobs he could perform is appropriate.  Accordingly,

within fourteen days of the date of this Order, the parties shall either file a joint stipulation with remand instructions or a brief, not to exceed three pages, as to what the appropriate remand instructions should be.

### VII. Conclusion

For the reasons set forth herein, the Commissioner's decision is **REVERSED**. The instructions on remand, and a remand order, will be issued by the Court after stipulation or further briefing by the parties.

Dated: June 15, 2016

Kathleen B. Burke
United States Magistrate Judge